NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WILLIAM RUSSELL,
*Plaintiff/Appellant,*

*v.*

RICHARD P. VAIRO, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 16-0414
FILED 6-20-2017

Appeal from the Superior Court in Maricopa County
No. CV2014-051269
The Honorable John R. Hannah Jr., Judge

**AFFIRMED**

COUNSEL

William Russell, Scottsdale
*Plaintiff/Appellant*

Bonnett, Fairbourn, Friedman & Balint, PC, Phoenix
By Robert J. Spurlock, Kevin R. Hanger
*Counsel for Defendants/Appellees Vairo*

McCarthy, Holthus & Levine, PC, Scottsdale
By Paul M. Levine
*Counsel for Defendant/Appellee Taylor*

Ivy L. Kushner, Attorney at Law, Scottsdale
By Ivy L. Kushner
*Counsel for Defendant/Appellee Myers*

Thomas, Markson, Rubin & Kelley, PC, Phoenix
By Neal B. Thomas, Michael G. Kelley
*Counsel for Defendant/Appellee West USA*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Jennifer B. Campbell joined.

---

**J O H N S E N**, Judge:

**¶1**        William Russell appeals from the dismissal of his complaint, which the superior court ordered as a sanction for Russell's repeated failures to comply with his discovery obligations.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        In July 2014, Russell filed a complaint against several defendants, alleging theft, extortion, "breach of duty and conflict of interest," "unfair debt collection practices," "loansharking," "racketeering," "breach of trustee's duties," "unlicensed mortgage banking and brokering," "collusion, predatory lending and unjust enrichment," and "intimidation and intentional infliction of emotional distress."

**¶3**        Russell's claims all pertained to a series of interconnected real estate transactions involving properties in West Phoenix.  Russell alleged he borrowed money from some of the defendants to buy the properties. According to his complaint, after he suffered an unrelated business setback, some of the properties fell into foreclosure.  Russell alleged that some of the defendants agreed to buy the properties and hold them in trust for him until he could bring the loans current.  Eventually one of the defendants, a real estate agent, agreed to list some of Russell's properties for sale to generate funds to repay the loans.  Russell alleged some of the properties were sold and the proceeds used to pay down the loans.  He further alleged that some of the defendants, however, wrongly refused to credit him with payments he made on the loans and continued to collect rent on properties after they should have been relinquished to him.  Further, he alleged that some of the

2

defendants refused his repeated requests for an accounting and refused to accept payments he offered to pay off a loan.

¶4 Russell sought temporary injunctive relief, and after a five-day hearing, the superior court entered a preliminary injunction restraining defendants' sale or foreclosure of three of the properties. In entering the injunction, the court found Russell had raised serious questions concerning the merits of his claims and that he was likely to succeed on certain of the claims. The court made detailed findings and conclusions in a 13-page order issued in late 2014.

¶5 As the litigation continued, defendants moved in July 2015 to sanction Russell for failure to provide discovery. According to a declaration filed in support of the motion, Russell's initial disclosures identified broad categories of alleged damages totaling $2,406,421. His disclosures did not, however, identify documents supporting his damage claims. Defendants stated that, during Russell's deposition on May 13, 2015, he was questioned at length about the existence of documents supporting his claimed damages, and he agreed that before July 15, he would produce many of the damage documents defendants sought. Defendants asserted that a day later, however, Russell told the defendants he had changed his mind and would not produce the documents. Accordingly, defendants served formal requests for production of Russell's damage documents, along with interrogatories. Meanwhile, the resumption of Russell's deposition was set for July 16. Russell did not respond to the formal document requests, but on July 13, Russell emailed defense counsel saying he had "boxes" of documents pertaining to the transactions he had sued about, and defendants demanded he produce them by noon on July 15, the day before the continuation of his deposition. When Russell did not produce the documents by the designated time on July 15, the defendants notified him that his deposition was going to be continued. Nevertheless, because Russell had indicated to defense counsel that he would bring "twelve boxes" of documents for them to review on July 16, counsel emailed Russell to say that they would accept the boxes and review the documents. Despite at least two emails from defendants confirming they would accept the documents on July 16, Russell failed to appear at the scheduled time to present his documents. According to defendants, Russell did not say whether he was withdrawing his agreement to produce the documents, but said simply he was on his way to Montana.

¶6 In a motion to compel filed on July 28, defendants asked the court to order Russell to respond to the outstanding document requests and interrogatories (both of which were served on May 14) and to appear for

the resumption of his deposition.  Russell did not respond to the motion to compel; nor did he respond to a defense motion for summary adjudication and sanctions filed on August 26.

¶7	At oral argument in September 2015, Russell appeared through newly retained counsel, who told the court that Russell would supplement his disclosure statement and would produce documents within 30 days.  After argument, the court ordered Russell "through counsel" to make a comprehensive disclosure pursuant to Arizona Rule of Civil Procedure 26.1 and to respond to defendants' document requests, all within 30 days.  The court further imposed attorney-fee sanctions on Russell totaling $3,000.

¶8	In explaining its decision to award sanctions, the court stated:

> I went pretty far [in prior hearings] to try to be fair with Mr. Russell.  And I took into account that there appears to be something in his personality that just shuts down and refuses at some point.

> But if that's who he is, he's just going to have to work with that because at some point the other side, no matter how righteous – he might think his claim is – the other side has  a right to expect compliance from him.  So he can consider this a shot over the bow . . . that . . . he needs to – for what he needs to do in the future because I agree with them that there needs to be a message to him.

The court also ordered the parties to submit a scheduling order within 60 days.

¶9	Notwithstanding the order requiring Russell to provide the required discovery, however, Russell failed to comply.  As defendants argued later, in the weeks following entry of the September order, Russell entirely failed to respond to requests for production of documents, produced just 15 new documents relevant to the case,  and responded to an interrogatory about his damages by providing a spreadsheet without explanation.  Accordingly, in November 2015, defendants filed a "Motion to Dismiss Litigation as Ultimate Discovery Sanction," arguing Russell had failed to comply with the September order directing him to serve a proper disclosure statement, to respond to the discovery requests, and to pay the sanctions award.

¶10　　　　Two weeks following the motion to dismiss, the lawyer Russell had retained just before the prior oral argument applied for leave to withdraw, citing, *inter alia*, Russell's "repeated failure to provide [his lawyer] with disclosure and discovery materials and other materials as or when promised." According to Russell's counsel, his client had "fail[ed] to provide information and documents pertaining to the case as agreed when [the lawyer] accepted the case" and had a "habit of blaming others for his failure to comply with court orders and his failure to fulfill commitments made" to the lawyer.

¶11　　　　With his application to withdraw pending, Russell's lawyer filed a response to the motion to dismiss that, for the most part, recited an account "dictated" by Russell. Russell asserted he had responded to the defendants' written discovery requests and had provided the defendants "with electronic access to thousands of pages of documents." He also explained his wife had been the "detail person" who assembled materials that he used in the preliminary injunction hearing. According to Russell, his wife had prepared drafts of his disclosure statement and his responses to the written discovery, but she had grown frustrated with the litigation and "antagonistic to him," and had refused to give him documents or provide further assistance; indeed, he said, she had obtained an order of protection barring him from contacting her. Apparently attempting to explain his delay in prosecuting the litigation without his wife's assistance, Russell stated, "Plaintiff is not good at reading long documents when he is under pressure." Through counsel, Russell argued that his failures to comply with his discovery obligations were not willful nor prejudicial to the defense.

¶12　　　　In their reply in support of their motion to dismiss, defendants attached a chart that Russell had provided in response to an interrogatory asking for damage information, and asserted that when Russell was examined in his deposition about a similar chart, he admitted the listed damages were wrong, inappropriate or not appropriately calculated. They further asserted that Russell had yet to provide a detailed disclosure statement and, although, he did upload some documents to a cloud drive, they were not organized or presented in "coherent fashion in response to interrogatory or discovery responses."

¶13　　　　The court granted Russell's counsel's application to withdraw, and set a one-hour argument on the defendants' motion to dismiss for March 4, 2016, more than three months after defendants filed the motion. At the argument, the court questioned defense counsel about Russell's contention that he had uploaded relevant documents "to the

cloud," and counsel responded that the uploaded documents were those exchanged during the preliminary injunction proceeding, rather than documents called for by the requests for production that defendants served later. More specifically, defense counsel cited a spreadsheet filed with the court that identified the documents Russell had produced, asserting many of them were public records or exhibits filed in other proceedings.

¶14 The court asked the defendants why it would not be appropriate to impose a lesser sanction than dismissal, suggesting an order barring Russell from offering in evidence any documents he had withheld and an instruction allowing the jury to draw an adverse inference. But defendants responded that the lesser remedy the court proposed would not ameliorate the prejudice Russell's disclosure failures created for them. Without his production of relevant documents, the defendants asserted, they would be unable to cross-examine him at trial about his damage claims. And they pointed out that the court had already imposed a "lesser sanction" six months before, when it had ordered Russell to pay sanctions and serve proper discovery responses within 30 days.

¶15 As the argument came to a close, the superior court at length explained its decision to Russell, who was present by phone:

> The -- we have been down this road once already in this case, as the Defendants rightly point out, and there was a sanction -- an order -- a sanction order requiring compliance and payment of money. That order has not been complied with.

> And specifically it's difficult with respect to the interrogatory responses, and to some extent the document production, it's difficult for me to assess that because those responses are not before the Court, though I do have some sense of the document production anyway from what was filed on behalf of [one of the defendants].

> But what is -- it is not in dispute that there has not been compliance with the order requiring a new Rule 26.1 disclosure and some organization of the information into a coherent statement of claims and damages arising from those claims, and that was really -- that's really the heart of what -- for all this time, really, for the better part of a year and a half.

> The Defendants have been asking for the -- Defendants at the preliminary injunction hearing were asking for it back then,

and I think it's fair to say that they're still unhappy with me because I didn't sufficiently require it at that time.

Here's the thing, Mr. Russell. This is private dispute between private parties over private business transactions. You came to me and invoked the power of the Court on your side because you said that what was happening was unfair to you, and I took you seriously, and I exercised the power of the Court.

So that -- when that happens, it's not just a private matter between private individuals anymore. Once you do that, you have obligations that have to be met, and those are a function of your having come to the court and asked to invoke the power of the Court on your behalf, and you haven't done it.

* * *

And I know that you have reasons. What I -- whether I think those reasons are good or bad at some point doesn't matter anymore. At some point deserving's got nothing to do with it, as they said in the movie.

And, I mean, that in the larger sense, not in the sense of Rule 37 failure to comply because there's clearly been a failure to comply. At some point it's just not fair to the Defendants anymore, and the Defendants are subject to an injunction that prevents them from acting because you invoked the power of the Court.

And at some point it's not fair to them to prevent -- continue to prevent them from acting when the process that was started by you is not moving forward and has -- there's no sign on the horizon that it's ever going to move forward.

The Court -- for the record, the Court fully understands that dismissal of the case for failure to comply with disclosure[,] [d]iscovery obligations is an extreme, rare, drastic step. On this record, I'd like to think it can't be said that the Court didn't allow every opportunity that it could for compliance because I think Mr. Russell was given ample opportunity to comply. And as I said, at some point the reasons -- they're not irrelevant, but they're secondary.

**¶16** The court then entered judgment dismissing Russell's claims, lifting the injunction and granting costs and an additional attorney's fees award of $5,985 to one defendant and $3,046.50 to other defendants.

**¶17** Russell filed a timely notice of appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-2101(A) (2017).[1]

## DISCUSSION

**¶18** At the time of the judgment in this case, Arizona Rule of Civil Procedure 37(b)(2) provided that if a party "fails to obey an order to provide or permit discovery," the court "may make such orders in regard to the failure as are just."[2] Among the remedies the rule expressly allowed the superior court to impose was "[a]n order . . . dismissing the action or proceeding or any part thereof" and an award of the moving party's reasonable expenses. Ariz. R. Civ. P. 37(b)(2)(C). Moreover, the rule granted the court the same power to remedy a party's failure to serve a timely Rule 26.1 disclosure. Ariz. R. Civ. P. 37(c)(1).

**¶19** Although the superior court's discretion to dismiss a case for a discovery violation "is more limited than when it employs lesser sanctions," *Wayne Cook Enters., Inc. v. Fain Props. Ltd. P'ship*, 196 Ariz. 146, 147, ¶ 5 (App. 1999), a "willful disregard of discovery obligations" may be a "valid basis" for entry of judgment in favor of the moving party, *Roberts v. City of Phoenix*, 225 Ariz. 112, 119, ¶ 27 (App. 2010). "We will affirm a trial court's imposition of sanctions for discovery violations, including entry of . . . judgment, unless the record reflects a clear abuse of discretion." *Roberts*, 225 Ariz. at 119, ¶ 24.

**¶20** Without citation to the record, Russell argues on appeal that his disclosure was merely "tardy" and that he provided "discovery substantially in compliance with the trial court's orders." We have closely reviewed the record and conclude it does not support his contention. As the superior court stated in imposing the sanctions, Russell was on notice from the prior ruling on the defendants' motion to compel that he would be

---

[1] Absent material revision after the relevant date, we cite a statute's current version.

[2] Rule 37 was revised and "restyled" effective January 1, 2017, after entry of the judgment in this case. We deal here with the prior version of the Rule.

held to his disclosure obligations under the rules. Through counsel, Russell agreed in September 2015 to file a disclosure statement and discovery responses within 30 days. He did not do so, nor does the record disclose any efforts by Russell to comply with the September order or his other disclosure obligations during the three months between the filing of the motion to dismiss and the date of oral argument on the motion.

¶21 Russell argues on appeal that the superior court should have sanctioned him by imposing an attorney's fees award rather than dismiss his case. But the court already had imposed fees when it ruled against Russell in September 2015 on the defendants' motion to compel. Having once imposed a fee sanction, the court was entirely within its discretion to decline to impose another on Russell when he failed to comply with the prior order. Contrary to Russell's contention that the court abused its discretion, the court displayed great patience in dealing with Russell throughout the course of the litigation, from the five-day injunction hearing in which Russell appeared pro se, through the court's careful consideration of the record presented on Russell's subsequent disclosure violations and its explanation of its ruling to Russell at the close of the hearing on the motion to dismiss.

¶22 Finally, Russell argues that the superior court violated his due-process rights when it "unreasonably restricted" Russell's remarks during the argument on the motion to dismiss. Having closely reviewed the transcript, we conclude the record does not support his contention. To the contrary, the superior court treated Russell with respect and allowed him a full and complete opportunity to litigate his case within the applicable rules and the law.[3]

---

[3] Russell argues the court abused its discretion by dismissing his complaint with prejudice, suggesting the court should have imposed the lesser sanction of a dismissal without prejudice. The judgment does not specify whether the dismissal is with or without prejudice. Nevertheless, such a judgment constitutes a judgment on the merits with res judicata effects. *Phillips v. Ariz. Bd. of Regents*, 123 Ariz. 596, 598 (1979). For the reasons stated, ¶¶ 20-22, his argument for a lesser sanction is unavailing.

## CONCLUSION

¶23      For the reasons stated, we affirm the judgment. Contingent on defendants' compliance with Arizona Rule of Civil Appellate Procedure 21, we grant them their costs on appeal and a reasonable amount of attorney's fees pursuant to A.R.S. § 12-349(A)(1) (2017) (allowing sanctions against party who "brings or defends a claim without substantial justification").



AMY M. WOOD • Clerk of the Court
FILED: AA